## TAYLOR & M'NEAL *vs* PHELPS.—June, 1827.

Where a debt has been recovered by attachment in a foreign court, the recovery is a protection to the debtor, as garnishee, against his original creditor.

In the absence of any proof of fraud or collusion, the presumption is, that what is done under a foreign attachment, is rightly done, and that the claim of the attaching creditor is established to the satisfaction, at least of the court, in which the judgment of condemnation is obtained.

Foreign judgments are not conclusive when sought to be enforced by suits being brought upon them, they are then but *prima facie* evidence—may be impeached for irregularity, and rebutted by evidence.

The judgments of foreign courts of competent jurisdiction, when they come incidentally in question, as where they are relied upon by garnishees as a protection against the claims of their former creditors, have the force and effect of domestic judgments, and are conclusive.

APPEAL from *Baltimore* County Court. This was an action of *assumpsit*, brought by the appellants against *James Montan-*

*devert,* and *Henry Phelps,* surviving partners of *Jonathan O. Walker,* deceased. Upon the writ which issued, *Montande-vert* was not arrested. The declaration contained two counts— one for money had and received, and the other on an *insimul computassent.* The defendant, (now appellee,) pleaded *non assumpsit,* and issue was joined.

At the trial the plaintiffs offered in evidence an account ren-dered to them by the defendant, and his said partners, *(Mon-tandevert, Walker, & Co.)* of sales of herrings, received at *Port-au-Prince,* by the latter from the former, made in Janua-ry and February 1820, amounting to $933 67; and the amount of charges $473 96, being deducted, left due to the plaintiffs the sum of $459 71; which account was admitted to be in the handwriting of the defendant, and by him delivered to the plain-tiffs. The defendant then offered in evidence the commission which issued in this cause to *Port-au-Prince,* on the 10th of April 1823, for the purpose of taking testimony, and docu-ments and translations. The commissioners, by their return to the commission, stated that they had taken the deposition of *J. Mullery,* who, to the defendant's *second* interrogatory— "Are you, or are you not, acquainted with the laws of that part of *Saint-Domingo* in which *Port-au-Prince* is situate? If yea, state what is the law relative to attachments. And can or cannot the creditors of one man attach the funds of his creditor in the hands of a third person; and can he or can he not com-pel such third person to pay him the amount in such third per-son's hands belonging to such debtor?" Answered in the af-firmative. To the defendant's *third* interrogatory—"If there be such a law, as before referred to, is it written law, or the common law of the country? If it be written law, annex a copy of the same, examined and compared by you with the original, to your answer hereto." He answered "it is a writ-ten law of which the annexed is a true copy. "To the defen-dant's *fourth* interrogatory—"Did or did not a certain *Frede-rick Kramer,* or some other person, lay an attachment on the funds of *Taylor* and *M'Neal,* in the hands of *Montandevert, Walker, & Co.* of *Port-au-Prince?* If yea, when was it done; and did the said *Kramer* get a judgment against said *Montan-*

*devert, Walker, & Co.* and for what amount; and was the same paid by them to him? He answered in the affirmative; and says, "the attachment was laid in January or February 1820, and judgment was obtained against whatever funds there might be in the hands of *Montandevert, Walker, & Co.* belonging to *Taylor* and *M'Neal,* not exceeding $797 50." To the defendant's *fifth* interrogatory—"Annex a copy of the proceedings compared by yourself with the original record in the attachment so laid in the hands of said *Montandevert, Walker, & Co.*" He answered "the annexed is a just and true copy of the original proceedings in this case, copied and compared by himself, from the original records." The deponent further stated "that attachments are served by the sheriff who keeps no copy of them, nor are they registered in any other office. That in this case he knows of the attachment being duly and legally laid by the said *F. A. Kramer,* on the property of *Taylor* and *M'Neal,* in the hand of the said *Montandevert, Walker, & Co.* and that in consequence thereof, and of the judgment subsequently obtained against the said *Taylor* and *M'Neal,* the amount of funds belonging to them in the hands of *Montandevert, Walker, & Co.* was paid over, or placed to the credit of the said *Kramer,* by *Montandevert, Walker, & Co.*" Then follows—[Seal.] "Extract from the records deposited at the office of the Civil Court, sitting at *Port-au-Prince.* We the subscribers, appointed arbitrators by Messrs. *Montandevert, Walker, & Co.* on one part, and Mr. *F. A. Kramer* on the other, in order to decide upon the differences existing between the said Messrs. *Montandevert, Walker, & Co.* and *F. A. Kramer,* concerning various debts due by Messrs. *Dennis* and *Brown,* of *Miragoane,* after having heard the two parties, and after having attentively examined the several documents relating to the business in contestation, are of opinion that the advance of the sum of seven hundred and ninety-seven dollars and fifty cents, made in the month of February last, to said Mr. *F. A. Kramer,* by Messrs. *Montandevert, Walker, & Co.* was not made to him but under his personal responsibility; and that the papers, establishing the debts of said Messrs. *Dennis* and *Brown,* were not deposited in the hands of Messrs. *Montandevert, Walker, & Co.* but to be used as collateral security; or further, that the

payment of the sums due by Messrs. *Dennis* and *Brown*, has not yet been made. We have adjudged, and do adjudge Mr. *F. A. Kramer*, to repay Messrs. *Montandevert, Walker, & Co.* in the space of four months from this date, the said sum of seven hundred and ninety-seven dollars and fifty cents. And in case it should be his intention to leave this Island before the expiration of the said term, he shall be held to furnish a good and solvent security that the present award shall be executed in all its force; on the other hand, Messrs. *Montandevert, Walker, & Co.* are held, on their part, to render every assistance in their quality of merchants, consignees, and patented, to facilitate the recovery of the debts due by *Dennis* and *Brown*. *Port-au-Prince, Haiti*, 7th September 1819. (Signed,) *Robert Golder,*
*James Booth.*

Examined.—True copy.—*Detre Leon*, clerk.

"Code of civil proceedings. Title VII, of attachments or oppositions, article 557. Every creditor can, in virtue of titles which are of public authenticity or private, attach in the hands of a third person the sums or effects belonging to his debtor, or make opposition to their delivery. 558. If there are no titles, the judge of the debtor's residence, and even the judge of the place of residence of the third person, can, upon petition, permit the attachment or opposition.

"Extract from the minutes deposited at the registry of the civil tribunal sitting at *Port-au-Prince*. To the Dean and Judges of the Civil Tribunal sitting in this city, begs humbly Messrs. *Montandevert, Walker*, foreign merchants, established in this city, patented under No. 39, whose domicil is chosen in the study of the undersigned defender. See annexed an under date the 7th of the present month, by Messrs. *Robert Golder* and *James Booth*, merchants, residing in this city, requires that it please you to be willing to order by an ordinance put at the end of the present, that it will be authorised, and that it will issue in its full and entire effect—You will do well. *Port-au-Prince*, the 24th September, 1819.

Signed, *Mallery*, Def.

"Seeing the above demand in the name of Mr. *Montandevert Walker*, a foreign merchant, established in this city, patented under No. 39, asking the execution or confirmation of a

sentence awarded, which has been presented to us this day—
We, *Henry Amedèe Gayot*, Dean of the Civil Tribunal sitting
in this city, order that the judgment awarded, made by the con-
sent of the parties, between Mr. *Montandevert Walker* and
Mr. *F. A. Kramer*, by the arbitrators, *Robert Golder* and
*James Booth*, shall be deposited at the registry of the court,
and purely and simply shall issue to have its full and entire ef-
fect, in virtue of article one thousand and twenty of the code
of civil proceedings. Given by us, Dean of the Civil Tribu-
nal, *Port-au-Prince*, the 25th September 1819, the 16th year
of Independence.

(Signed)         Gayot.

"Extract from the registers of the registry of the civil tri-
bunal sitting at *Port-au-Prince*. In the name of the Repub-
lic. The civil tribunal sitting at *Port-au-Prince*, competent-
ly united at the palace of justice, have rendered the following
judgment: The tribunal, on the petition of Mr. *Walker*, pre-
sent, assisted by Mr. *Mallery*, public defender, granted the act
to the said *Walker*, a foreign merchant, patented in this city,
by the consent of Mr. *F. A. Kramer*, a foreigner, also present
by summons, at the request of Messrs. *Mantandevert, Walk-
er & Co.* asking the execution of the awarded judgment of the
7th of September last, with the constraint of the body, which
the said *Kramer* has required of the judges—as far as Messrs.
*Montandevert, Walker & Co.* foreign merchants, patented in
this city, were authorised to pay themselves the amount of the
condemnation pronounced by the awarded judgment of the 7th
September of the last year, duly confirmed the 25th of the same
month, out of the funds which they have in their hands belong-
ing to Messrs. *Taylor & M'Neal*, for which the sum carried
to the awarded judgment aforesaid has been borrowed. Given
by us, *F. Abeille*, Judge, discharging the duties of Dean, *Nep-
tune* and *Perpignand*, Judges at the Hall of Justice in ordi-
nary audiance, on the 29th February 1820, the 17th year of
Independence—We command, &c. In faith of which the pre-
sent has been signed by the Judge *Abeille*, and the register.

(Signed)        *F's. Abeille.*

*Armand*, Register.

Compared—for copy examined.

*Detre Leon*, Register."

Sworn to be true and correct translations by *Thomas W. Griffith.* The execution of the commission was admitted, and all errors in the pleadings were waived by consent of the parties. The defendant then prayed the court to instruct the jury, that the plaintiffs were not entitled to recover. Which instruction the Court, [*Archer,* Ch. J. and *Hanson,* A. J.] gave to the jury. The plaintiffs excepted; and the verdict and judgment being against them, they appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Gill,* for the Appellants. contended, 1. That the instruction of the court below was wrong, because the proceedings of the court at *Port-au-Prince,* set forth in the commission, established that no final judgment had been there rendered; that judgment was manifestly unfit to be adopted as final and conclusive. It did not contain a condemnation of *Taylor* and *M'Neal's* funds. It was a mere authority to *M, Walker, & Co.* to pay themselves a debt due from *Kramer,* out of *Taylor* and *M'Neal's* funds in their hands, as far as they *(M. W & Co.)* were authorised; and how far they were authorised does not appear. The proceedings leaving the question of authority open, finally settled nothing; short of a final sentence of condemnation the proceedings on attachment were no bar.

2. The defence relied on arose from testimony offered by the defendant, he had therefore no right to assume its truth, and require of the court below, *an absolute instruction* to the jury, that the plaintiffs were not entitled to recover. Where the plaintiff or defendant requires an instruction from the court, on the testimony of the opposite party, it is like a demurrer to evidence, and admits the truth of the facts offered in proof, and reasonable inferences from them; in such case the instruction may be positive and conclusive, because, as the court have the facts admitted, the intervention of a jury is unnecessary; but where either prays an instruction *on his own proof,* the instruction, if granted, should be hypothetical, as if the jury believe the testimony; otherwise either party may at pleasure take the question of how far the testimony is true or false, from the jury. They are the exclusive judges of the credibility of the

evidence. . The theory of our system has been invaded by this instruction; and a question of great importance in every case, was determined in this cause by the wrong tribunal.

3. There was evidence of collusion between the defendants and *Kramer*, from the benefit of which the court below debarred the plaintiffs by the positive and conclusive instruction given to the jury. The facts established a claim for the plaintiffs; the collusion affects the defence relied on. The sum due from *Kramer* to *M, Walker, & Co.* was borrowed on the "personal responsibility" of the former. This appears from the award in the commission. In the proceedings between *M, W, & Co.* and *Kramer*, (the former seeking execution of their award against the latter,) this same debt is said to be borrowed by *Kramer* for *Taylor* and *M'Neal.* There is not the slightest evidence to show that if *Kramer* did in fact borrow any sum for *Taylor* and *M'Neal*, that he disbursed it for their account. It does not appear that *Kramer* was the creditor of *Taylor* and *M'Neal*; the contrary results from the statement, that he borrowed money for them. It is unaccountable, but on the idea of collusion, that *M, W, & Co.* in endeavouring to enforce an award against *Kramer*, should suddenly by a new direction given to the proceedings, obtain judgment against *Taylor* and *M·Neal*, they not being indebted to *Kramer.* That *Kramer* was unable to pay, was manifest from all the documents; and this shows the reason of the combination. The evidence sufficiently raises the question of fraud; and it should have been left to the jury. Proceedings in a foreign attachment, though a good bar, must like all other matters be liable to impeachment for fraud.

4. Foreign laws are to be compared with the original, and sworn to be a true copy. 2 *Esp. Dig.* 439. Here there is no proof that the witness compared the copy. The answer of the witness to the *fifth* interrogatory is objected to, so far as the witness speaks of a judgment rendered. Foreign judgments are not conclusive. They may be examined into. *Barney vs Patterson's Lessee,* 6 *Harr. & Johns.* 202, 203. *Pawling vs Bird's Ex'rs.* 13 *Johns. Rep.* 206. It must be established that the court had jurisdiction over the case. Where the party to be affected by the proceedings is not present, the judgment is not

conclusive, nor is it evidence for any purpose. *Buchanan vs Rucker,* 9 *East,* 191, 192. *Owings & Cheston vs Nicholson & Williams,* 4 *Harr. & Johns.* 103, argument of Mr. *Pinkney.* The act of 1813, *ch.* 164.

*Meredith,* for the Appellee. The rule is well established, that where funds are attached for the debt of a person to whom the funds belong, the judgment is a bar. A person having the property of another, and pays it over by compulsion, is exonerated. *Le Chevalier vs Lynch,* 1 *Doug.* 170, *Allen vs Dundas,* 3 *T. R.* 125. *Hunter vs Potts,* 4 *T. R.* 187. *Sill vs Worswick,* 1 *H. Blk.* 669, 671. 683. *Philips vs Hunter,* 2 *H. Blk.* 408, 410. *M'Daniel vs Hughes,* 3 *East,* 367. *Embree vs Hanna,* 5 *Johns. Rep.* 101. *Holmes vs Remsen,* 4 *Johns. Ch. Rep.* 407. S. C. 20 *Johns. Rep.* 268. It is admitted that the judgment given in evidence in this case is properly authenticated. But it has been said that the judgment is examinable for irregularity. It is well settled, that if a foreign judgment comes collaterally as a defence in the cause, it is conclusive and unexaminable. *Cas. temp. Hardw.* 83. *Burrows vs Jemino,* 2 *Stra.* 733. *Roach vs Garvan,* 1 *Ves.* 159. *Turleton vs Tarleton,* 4 *Maule & Selw.* 20. *Hamilton vs Moore,* 3 *Dall. Rep.* 372, 373, *(note.)* *Smith vs Lewis,* 3 *Johns. Rep.* 168, 169. *Grant vs M'Lachlin,* 4 *Johns. Rep.* 34. *Barney vs Patterson's Lessee,* 6 *Harr. & Johns.* 203. *Embree vs Hanna,* 5 *Johns. Rep.* 101. *Holmes vs Remsen,* 4 *Johns. Ch. Rep.* 467. There is no difference between a judgment in attachment, from a judgment in any other case. It may be inquired, 1. Was the court at *Port-au-Prince* a court of competent jurisdiction? 2. Does it judicially condemn the debt, which is the subject of the present action? 3. Is there any evidence of fraud or collusion as between the defendant and the attaching creditor?

1. The law of the place was produced in evidence; and if it was duly approved, it did authorise the proceeding by attachment. It cannot be doubted, but that *Kramer* was a creditor of the present appellants. Is the law properly proved? This may be done in one of two ways. It may be by an authenticated, or by a sworn copy. The witness does not say expressly that he examined the law; but it is to be presumed from the

interrogatory propounded, and his answer thereto, that it was a sworn copy. It cannot be doubted but that it is a sworn copy. If the law is out of the case, there is still sufficient *prima facie* evidence from the record, to show that the court had jurisdiction. A want of jurisdiction must be shown by him who contests it. *Molony vs Gibbons,* 2 *Campb.* 502. *Shumway vs Tilghman,* 4 *Cowen's Rep.* 292. This court will intend that the court of *Port-au-Prince* had jurisdiction over the subject matter, unless it is shown to be otherwise.

2. What does the judgment condemn? Although the record has been incorrectly translated, yet shows that *Kramer* was indebted to the defendant's house in $797 50, for money borrowed for the appellants on *Kramer's* own responsibility, with a collateral security of debts due to *Dennis* and *Brown.* Proceedings were had to enforce payment of *Kramer.* A reference was made to arbitrators, who awarded that *Kramer* should pay to the defendant's house a sum of money. The award was not complied with, and an execution was awarded against *Kramer. Kramer* then petitioned the court to authorise this debt to be deducted out of the funds in the hands of the defendant's house, belonging to the appellants; and this the court directed to be done

3. No fraud appears in the transaction. Need not show a debt due to the plaintiff in the attachment. *M'Daniel vs Hughes,* 3 *East,* 367. Under our act of 1715, *ch.* 40, a person having funds in his hands belonging to his debtor, may attach the amount in his own hands to pay his own debt. The case at bar is not stronger, nor so strong, of a case of inferred fraud than our own laws sanction.

*Moale,* in reply. A judgment on a foreign attachment is only *prima facie* evidence of a debt, when it is to be enforced in this country. But it has been said, that when brought in incidentally it is then conclusive. The plaintiffs were never residents in *Port-au-Frince,* and had no notice of the proceedings, now attempted to be set up in bar of their action. There is no difference when a foreign judgment is offered as a set-off, and when it is to be enforced. This court did not, in *Barney vs Patterson's Lessee,* 6 *Harr. & Johns.* 202, say, that a foreign

judgment was conclusive when offered by way of set-off. There the judgment was offered in evidence as a link in the chain of the plaintiff's title. There can be no difference between a foreign judgment to be enforced, and where offered by way of set-off. *Owings & Cheston vs Nicholson & Williams,* 4 *Harr. & Johns.* 66, where all the parties were before the foreign tribunal, and yet this court decided that the judgment was not conclusive. In all the cases relied on by the counsel for the appellee, the parties affected by the foreign judgment were, or had been resident of the country in which such judgments were rendered, To make a foreign judgment on attachment, evidence for any purpose, it must appear that the defendant had been a resident or had been summoned. *Fisher vs Lane,* 3 *Wils.* 297. The record offered in evidence in this case does not show that the plaintiffs ever had been summoned, or had notice, or ever were under the jurisdiction of the court. Nor does it appear that any debt had been proved against them. *Buchanan vs Rucker,* 9 *East,* 194. *Borden vs Fitch,* 15 *Johns. Rep.* 121, 142, 143. To bind a person by a judgment he must be a party to the proceeding. There is nothing to show in this case that any proceeding was had by *Kramer* against the plaintiffs, so as to attach the funds of theirs in the hands of the defendant. Nor is there any thing to show that there was any process of attachment against the plaintiffs. The statute law of a foreign country must be proved by a copy, either properly authenticated, or sworn to be true. But the common law may be proved by parol evidence. Here there has been no legal proof of any law.

BUCHANAN, Ch. J. delivered the opinion of the Court. The facts of this case, as set out in the bill of exceptions taken at the trial, are in substance these: *F. A. Kramer,* upon his own responsibility, borrowed on account of the appellants $797 50, from *Montandevert, Walker & Co.* merchants at *Port-au-Prince,* who sued and obtained judgment against him for the amount so borrowed. To discharge himself from which, he sued out an attachment against the funds of the appellants, in the hands of *Montandevert, Walker & Co.* consisting of a balance of the proceeds of a shipment of herrings, amounting to $459 71, which he recovered by a judgment of condemnation

in the civil tribunal sitting at that place. For the amount so recovered, this suit was brought against the appellee, as surviving partner of the house of *Montandevert, Walker & Co.* and that recovery is relied upon as a full defence to the action.

. No principle is now better established, than that where a debt has been recovered by attachment in a foreign court, the recovery is a protection to the debtor, as garnishee, against his original creditor. *Chevalier vs Lynch*, 1 *Doug.* 170. *Philips vs Hunter*, 2 *H. Blk. Rep.* 402. *Holmes vs Remsen*, 4 *Johns. Ch. Rep.* 460. S. C. 20 *Johns. Rep.* 229. *Embree & Collins vs Hanna*, 5 *Johns. Rep.* 101, are in point, with many others, proceeding upon the same principle, to which it is unnecessary to refer; and nothing could be more unreasonable and unjust, than that a person, who has been coerced by the sentence of a court of competent jurisdiction to pay a debt once, should be compelled to pay it a second time. It would be any thing but right and proper, and therefore not sanctioned in law. It may indeed be said to be hard, that a creditor should lose his money, without having had an opportunity afforded him of being heard, and perhaps in such cases, injustice is frequently done.

These attachments, however, are resorted to by such as claim to be creditors of those whose funds are sought to be affected; and when in truth they are creditors, no injury is in fact done to those whose debts are attached, being only an application of their funds in that form to the payment of their debts, to which they might be coerced by the attaching creditors in a different form. It is but the turning over one debt in discharge of another. And in the absence of any proof of fraud or collusion, the presumption is, that what is done is rightly done, and that the claim of the attaching creditor is established to the satisfaction at least of the court, in which the judgment of condemnation is obtained. Injustice may, and is sometimes, but not always done, in that *ex parte* form of proceeding: but in the case of a debtor, it would be extremely hard, that after having been made to pay the debt, by the authority of a court which he could not resist, he should be compelled to pay it over again; and in every such case, where he was not himself tainted with fraud, &c. injustice would be done. And it is not for us to complain of the effects of foreign judgments in attachment on the

rights of creditors here; our own attachment law has the same operation upon the rights of nonresident creditors.

The cases relied upon by the counsel for the appellants, to show that foreign judgments are not conclusive, are chiefly cases in which they were sought to be enforced by suits being brought upon them; and in such cases they certainly are not conclusive. The distinction is between the effect of a foreign judgment, when it is sought to be enforced by the party claiming the benefit of it, by bringing suit upon it, and when it only comes incidentally in question. In the former case it is not conclusive, but *prima facie* evidence only, and may be impeached for irregularity, and rebutted by other evidence. But in the latter, if it be by a court of competent jurisdiction, it has the force and effect of a domestic judgment, and the correctness of it cannot be examined into, but it is conclusive. This distinction was fully recognized and adopted in *Barney vs Patterson,* 6 *Harr. & Johns.* 182.

In this case the judgment of the civil tribunal at *Port-au-Prince*, does come incidentally in question, and is only introduced and relied upon by the appellee as a protection against the claim of the appellants, his former creditors, who are seeking to compel him to pay over again a debt, which under process of attachment he has once already been obliged to pay.

The jurisdiction of the civil tribunal at *Port-au-Prince* is not impeached, and however the fact may have been, there is no evidence in the record of any fraud or collusion having been practised. As far as appears to us, and we cannot look beyond the record, it was the common case of a creditor, attaching the funds of his absent debtor in the hands of a third person, and that is what is done every day in our own courts. And it would be thought very strange, and hard too, by a citizen of this state, if, after being obliged by a judgment in attachment in one of our courts to pay the amount of a debt due from him to a citizen of *Virginia*, he should on going into that state, be subject to be sued by his original creditor there, and made to pay the same debt over again; and that is exactly what it is sought to make the appellee do in this case, but which the law will not sanction.

JUDGMENT AFFIRMED.